UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | No. 2:13-cv-1228 GEB KJN |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| RUBEN CONTRERAS MACHUCA, et al., | |
| Defendants. | |

Presently before the court is plaintiff Joe Hand Promotions, Inc.'s ("plaintiff") motion for default judgment against defendants Ruben Contreras Machuca and Silvia Ochoa Gomez, both individually and doing business as Centennial Bar and Grill a/k/a Centenial Ranch Sports Bar and Grill (collectively "defendants").[1]  (ECF No. 19.)  After defendants failed to file an opposition to the motion in accordance with Local Rule 230(c), the March 27, 2014 hearing was vacated, and the motion was submitted on the record pursuant to Local Rule 230(g).  (ECF No. 22.)

For the reasons stated below, the undersigned recommends that plaintiff's motion for default judgment be granted in part, that judgment be entered in plaintiff's favor, and that plaintiff be awarded a total of $4,850.00 in statutory and compensatory damages.

////

---

[1] This motion was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(19) and 28 U.S.C. § 636(b)(1).

1

I.     BACKGROUND

Plaintiff initiated this action on June 20, 2013, alleging claims under 47 U.S.C. § 605; 47 U.S.C. § 553; and Cal. Bus. & Prof. Code §§ 17200 *et seq.*, in addition to a state law tort claim for conversion. (See generally Complaint, ECF No. 1 ["Compl."].) Defendants are the owners, operators, licensees, permittees, persons in charge, or persons with control of the commercial establishment doing business as Centennial Bar and Grill a/k/a Centenial Ranch Sports Bar and Grill ("Centennial Bar"), which is located at 10408 Franklin Boulevard, in Elk Grove, California. (Compl. ¶¶ 7-8.) Plaintiff was granted by contract "the exclusive nationwide commercial distribution (closed-circuit) rights to *Ultimate Fighting Championship 147: Wanderlei Silva v. Rich Franklin*, telecast nationwide on Saturday, June 23, 2012" ("Plaintiff's Program"), which included the distribution rights to "all under-card bouts and fight commentary encompassed in the television broadcast of the event." (Id. ¶ 18.)

Plaintiff alleges that on June 23, 2012, defendants either specifically directed the employees of Centennial Bar "to unlawfully intercept and broadcast Plaintiff's Program" at Centennial Bar, or that the actions of Centennial Bar employees are directly imputable to defendants "by virtue of their acknowledged responsibility for the actions of Centennial Bar." (Compl. ¶ 15.) Plaintiff further alleges that "the unlawful broadcast of Plaintiff's Program, as supervised and/or authorized by Defendants . . . resulted in increased profits for Centennial Bar." (Id. ¶ 16.)

In its complaint, plaintiff requested statutory damages of $110,000 for defendants' violation of 47 U.S.C. § 605, as well as recovery of all costs and reasonable attorneys' fees. (Compl. at 10.) The complaint further sought statutory damages of $60,000 for defendants' violation of 47 U.S.C. § 553, as well as recovery of all costs and reasonable attorneys' fees. (Id.) The complaint also sought compensatory, exemplary, and punitive damages; reasonable attorneys' fees; and costs of suit for defendants' tortious conversion of Plaintiff's Program. (Id. at 11.) Finally, the complaint requested restitution, declaratory relief, injunctive relief, attorneys' fees, and costs of suit for defendants' violation of sections 17200 *et seq.* of the California Business & Professions Code. (Id.)

Plaintiff's complaint and summons were personally served on defendant Machuca on July 23, 2013, at the address of Centennial Bar. (ECF No. 5.) Plaintiff's complaint and summons were served on defendant Gomez on August 5, 2013, by substituted service at the address of Centennial Bar. (ECF No. 6.)

On August 20, 2013, plaintiff filed a request for entry of default against defendant Machuca, which the Clerk of Court entered that same day. (ECF Nos. 7, 8.) Thereafter, on September 23, 2013, plaintiff also filed a request for entry of default against defendant Gomez. (ECF No. 14.) On September 25, 2013, the Clerk of Court entered defendant Gomez's default. (ECF No. 17.)

The instant motion for default judgment against defendants was filed on February 5, 2014. (ECF No. 19.)[2] Despite being served with process and all papers filed in connection with plaintiff's requests for entry of default and motion for default judgment, defendants failed to respond to plaintiff's complaint, plaintiff's requests for entry of default, or plaintiff's motion for default judgment.

## II.  LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6)

---

[2] Plaintiff previously filed a motion for default judgment against defendant Machuca only (ECF No. 9), which the court denied without prejudice for the reasons outlined in its October 17, 2013 order. (ECF No. 18.)

3

whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily disfavored.  Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim.").  A party's default conclusively establishes that party's liability, but it does not establish the amount of damages.  Geddes, 559 F.2d at 560.

III.   DISCUSSION

A.   Appropriateness of the Entry of Default Judgment Under the Eitel Factors

For the reasons stated below, an evaluation of the Eitel factors supports the entry of a default judgment.

1.   Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, plaintiff would potentially face prejudice if the court did not enter a default judgment.  Absent entry of a default judgment, plaintiff would be without another recourse for recovery against defendants.  Accordingly, the

4

first <u>Eitel</u> factor favors the entry of a default judgment.

2. <u>Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint</u>

The undersigned considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries. The undersigned must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See <u>Danning</u>, 572 F.2d at 1388; <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1175.

In its motion for default judgment, plaintiff only seeks relief on two of its four claims – its claim for violation of 47 U.S.C. § 605 and its conversion claim. (ECF No. 19-2.) Accordingly, the court only addresses these claims and declines to consider whether plaintiff's remaining claims were sufficiently pled and have merit.

a. <u>Liability under 47 U.S.C. § 605</u>

In its motion for default judgment, plaintiff seeks statutory damages pursuant to its claim under 47 U.S.C. § 605. That statute prohibits the unauthorized interception, reception, publication, or divulgence of interstate radio or wire communications. See 47 U.S.C. § 605(a). Specifically, it provides, in pertinent part, that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

The Ninth Circuit Court of Appeals has determined that satellite television signals are covered communications under 47 U.S.C. § 605(a). <u>DIRECTV, Inc. v. Webb</u>, 545 F.3d 837, 844 (9th Cir. 2008). The scope of section 605(a) is less clear with respect to transmissions intercepted

5

1  from a cable system, which are expressly covered under 47 U.S.C. § 553(a).  Section 553(a)
2  states, in relevant part: "No person shall intercept or receive or assist in intercepting or receiving
3  any communications service offered over a cable system, unless specifically authorized to do so
4  by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. §
5  553(a)(1).

6  Here, plaintiff has not alleged whether defendants intercepted Plaintiff's Program in the
7  course of transmission over a cable system or by satellite television signal.  A split of authority
8  has developed as to whether the unlawful interception of a broadcast in the course of transmission
9  over a cable system is covered by both sections 553(a) and 605(a) , or whether it is only covered
10 by section 553(a).  Compare United States v. Norris, 88 F.3d 462, 466-69 (7th Cir. 1996), and
11 TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 204-07 (3d Cir. 2001) (only covered by
12 section 553(a)), with Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 132-33 (2d Cir. 1996) (covered
13 by both sections 553(a) and 605(a)).

14 At a minimum, plaintiff's complaint and evidence support a conclusion that defendants
15 intercepted, without authorization, a transmission of Plaintiff's Program and broadcasted it to
16 their patrons.  Plaintiff has supplied proof of defendants' violation through an affidavit of a
17 private investigator who entered defendants' establishment on June 23, 2012, and viewed
18 Plaintiff's Program.  (See Affidavit of Perry Anderson ["Anderson Aff."], ECF No. 19-3.)  The
19 investigator's affidavit indicates that Plaintiff's Program was displayed on both televisions he
20 observed after entering Centennial Bar and provides details of the portions of Plaintiff's Program
21 that he viewed.  (Id.) (noting the names, attire, and actions of fight participants, a description of
22 the bartender, the number of televisions, and other distinguishing features of the establishment).
23 Accordingly, plaintiff establishes that defendants have violated the gravamen of 47 U.S.C. § 605.

24 However, plaintiff essentially concedes in its motion for default judgment that the
25 operative complaint and the record contain no allegations or evidence substantiating the nature of
26 the transmission that was intercepted by defendants. (ECF No. 19-1 at 8.)  Nevertheless, plaintiff
27 argues that, although it was unable to allege the precise means of transmission in this case (i.e.,
28 transmission over a cable system or satellite broadcast), it should not be prejudiced for its

1   inability to do so in light of defendants' failure to respond to the complaint.  (Id.)  The
2   undersigned agrees that, under the circumstances of this case, where plaintiff was deprived of the
3   opportunity to conduct discovery regarding the exact type of transmission at issue because of
4   defendants' failure to appear in the action, plaintiff should not suffer the resulting prejudice.  In
5   any event, the split of authority discussed above has little practical impact in this case, because, as
6   discussed below, the court recommends the entry of a judgment for statutory damages in the
7   amount of $1,000 and enhanced statutory damages in the amount of $3,000, which are towards
8   the lower end of the spectrum of statutory damages and enhanced statutory damages available
9   under both section 553 and section 605.

10       Consequently, the court finds that plaintiff's claim under 47 U.S.C. § 605 is sufficiently
11  pled and has merit.

### b. Conversion

13       The Ninth Circuit Court of Appeals has held that a claim for conversion in California has
14  three elements: "ownership or right to possession of property, wrongful disposition of the
15  property right and damages."  G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc.,
16  958 F.2d 896, 906 (9th Cir. 1992).  In this case, plaintiff purchased the licensing rights to the
17  program at issue, defendants aired Plaintiff's Program without plaintiff's permission, and plaintiff
18  alleges that it suffered damages as a result of this airing, because it was deprived of the
19  commercial license fee that would ordinarily be charged for permitting defendants to show
20  Plaintiff's Program in their establishment.  (Compl. ¶¶ 18-20, 32-35.)  Therefore, plaintiff's
21  conversion claim is sufficiently pled and has merit.

22       Accordingly, the second and third Eitel factors favor the entry of a default judgment as to
23  the claims for which plaintiff seeks relief by way of this motion.

### 3.   Factor Four: The Sum of Money at Stake in the Action

25       Under the fourth factor cited in Eitel, "the court must consider the amount of money at
26  stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F. Supp. 2d at
27  1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D.
28  Cal. 2003).  By its motion for default judgment, plaintiff seeks a judgment in the total amount of

$111,100 against defendants, consisting of $110,000 for violation of 47 U.S.C. § 605 and $1,100 for the tort of conversion.[3]

Given the substantial amount of money at stake, this factor could weigh against the entry of default judgment. See, e.g., Joe Hand Promotions v. Streshly, 655 F. Supp. 2d 1136, 1136 (S.D. Cal. 2009) (proposed award amount of $100,875 was "manifestly excessive under existing law"); J & J Sports Productions. v. Cardoze, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010) ("a large sum of money at stake would disfavor default judgment," such as damages totaling $114,200); see also Board of Trustees of the Sheet Metal Workers v. Vigil, 2007 WL 3239281, at *2 (N.D. Cal. Nov. 1, 2007) ("[D]efault judgment is disfavored if there were a large sum of money involved."). However, as discussed below, the court declines to recommend judgment in the large amount requested. Consequently, the fourth Eitel factor also weighs in favor of the entry of default judgment.

### 4. Factor Five: The Possibility of a Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pled allegations and documentation supporting its claims. Here, the court may assume the truth of well-pled facts in the complaint (except as to damages) following the clerk's entry of default, and thus there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default… there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. As such, the court concludes that the fifth factor favors a default judgment.

---

[3] In its complaint, plaintiff also requests attorneys' fees and costs in connection with its claim under 47 U.S.C. § 605, and requests attorneys' fees and costs, as well as punitive damages, in connection with its conversion claim. (Compl. at 10-11.) However, plaintiff's motion for default judgment indicates that it is only seeking statutory damages under 47 U.S.C. § 605 and compensatory damages with respect to its claim for conversion. (ECF Nos. 19-1; 19-2.) Moreover, no evidence of costs or attorneys' fees incurred was submitted to the court in connection with the pending motion. Accordingly, the court will not recommend the award of costs, attorneys' fees, or punitive damages.

8

### 5. Factor Six: Whether Default was Due to Excusable Neglect

"The sixth <u>Eitel</u> factor considers the possibility that the default resulted from excusable neglect." <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177. Here, defendants were properly served with plaintiff's pleading as well as with plaintiff's requests for entry of default and motion for default judgment. Thus, defendants have had ample notice of plaintiff's lawsuit and its intent to pursue a default judgment against them, yet they have not once filed anything in response to plaintiff's filings or otherwise made an appearance in this case. Accordingly, there is no indication that defendants' default resulted from excusable neglect, and the sixth factor thus favors entry of a default judgment.

### 6. Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177; <u>see also</u> <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Accordingly, although the court is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

Upon consideration of all the <u>Eitel</u> factors, the court concludes that plaintiff is entitled to the entry of default judgment against defendants, and recommends that such a default judgment be entered. All that remains is the determination of the relief to which plaintiff is entitled.

### B. Terms of the Judgment to be Entered

After determining that a party is entitled to the entry of default judgment, the court must determine the terms of the judgment to be entered. As stated above, plaintiff requests judgment in the total amount of $111,100 against defendants, consisting of $110,000 for violation of 47 U.S.C. § 605 and $1,100 for the tort of conversion. Although defendants failed to object to the amount requested, one of the factors the court is free to consider in exercising its discretion in

granting default judgment is the sum of money to be awarded.  See J & J Sports Prods., Inc. v. Jurado, 2011 WL 6153605, at *3 (E.D. Cal. Dec. 12, 2011).  Considering plaintiff's briefing and the record in this case, the court recommends that damages be awarded, but not in the amount requested.

### 1. Damages Under 47 U.S.C. § 605

For purposes of a 47 U.S.C. § 605 claim, a plaintiff may elect to seek either actual or statutory damages.  47 U.S.C. § 605(e)(3)(C)(i)(I & II).  The statute generally provides for statutory damages for each violation of not less than $1,000 and not more than $10,000, as the court considers just.  47 U.S.C. § 605(e)(3)(C)(i)(II).  Plaintiff seeks the maximum award of $10,000.  The statute also authorizes enhanced damages of not more than $100,000 if the court finds the violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C)(ii).  Here, plaintiff seeks the maximum of $100,000 in enhanced statutory damages, for a total of $110,000 in statutory damages.  In support of its request, plaintiff argues that the requested amount is justified primarily because of the need to deter broadcast piracy and the significant harm done to plaintiff's business as a result of such activities.  Although deterrence is certainly an important consideration, the court finds plaintiff's requested damages to be grossly excessive and unsupported by the record here.

In this case, plaintiff's investigator stated that during the roughly 45-minute period he was present in Centennial Bar, he observed only 2-3 patrons inside the establishment, which had the capacity to hold 75 persons.  (Anderson Aff. at 2-3.)  The investigator noted that Centennial Bar had two older, twenty-inch television sets in the bar area.  (Id. at 2.)  He also reported that there was no cover charge for entry on the night in question.  (Id.)  Furthermore, there is no evidence before the court that defendants promoted the fight's airing at the establishment, or that a special premium on food and drink was charged on the night of the fight.  Indeed, with only 2-3 patrons in the establishment, it is highly unlikely that Centennial Bar was doing any greater level of business on the night Plaintiff's Program was shown than at any other time.

////

In light of this record, which lacks evidence of defendants reaping any significant commercial advantage or private financial gain from their piracy of Plaintiff's Program, the undersigned recommends that plaintiff be awarded $1,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).  However, the court takes judicial notice of the fact that defendants had violated 47 U.S.C. § 605 at least once before – in another action before the undersigned, defendants have likewise defaulted on a claim pursuant to 47 U.S.C. § 605.  See J & J Sports Productions, Inc. v. Machuca et al., 2:13-cv-1076 JAM KJN (E.D. Cal.).  Because a repeat violation is at least arguably more indicative of willful conduct for purposes of commercial advantage or financial gain, the court recommends that plaintiff be awarded an additional $3,000 in enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), for a total of $4,000 in statutory damages, which the court finds appropriate under the circumstances here.  See J & J Sports Productions, Inc. v. Jurado, 2011 WL 6153605, at *4 (E.D. Cal. Dec. 12, 2011) (collecting awards in similar cases; awarding $1,000 in statutory damages and $3,000 in enhanced statutory damages in a default judgment where the defendant was not a repeat offender, but where the program at issue was broadcast to a larger number of patrons).

### 2. Damages for Conversion

Plaintiff's motion for default judgment also seeks an award of $1,100 in compensatory damages for the state law tort of conversion.   Damages for conversion are measured by the value of the property at the time of the conversion.  Cal. Civ. Code § 3336; see also Stan Lee Trading, Inc. v. Holtz, 649 F. Supp. 577, 581 (C.D. Cal. 1986); Spates v. Dameron Hosp. Ass'n, 114 Cal. App. 4th 208, 221 (2003).  In the context of broadcast piracy, damages for conversion have often been calculated based upon the amount that the defendant would have been required to pay for a proper sublicensing agreement.  See J & J Sports Prods., Inc. v. Jurado, 2011 WL 6153605, at *5 (E.D. Cal. Dec. 12, 2011); J & J Sports Productions, Inc. v. Ro, 2010 WL 668065, at *4 (N.D. Cal. Feb. 19, 2010).

Here, the affidavit of plaintiff's president, Joe Hand, Jr., indicates, by reference to Exhibit 2 to his affidavit, that defendants' establishment, which has a maximum occupancy of 75 persons, would have been required to pay a sublicense fee of $1,100 to lawfully air plaintiff's Program.

(ECF No. 20, ¶ 8.) However, the referenced Exhibit 2 actually indicates that the sublicense fee for a 51-75 persons occupancy establishment would have been $850. (Id. Ex. 2.) Accordingly, the court recommends an award of $850 on plaintiff's conversion claim.

IV.   CONCLUSION

In sum, the court finds that plaintiff is entitled to $4,000 in statutory damages (based on its claim under 47 U.S.C. § 605) and $850 in compensatory damages (based on its claim of conversion), for a total of $4,850.

Accordingly, IT IS HEREBY ORDERED that, within five (5) days after these findings and recommendations are filed, plaintiff shall serve a copy of the findings and recommendations on defendants by mail at the address where service of process was effectuated, or at any more recent address known to plaintiff, and shall forthwith file proof of such service.

IT IS ALSO HEREBY RECOMMENDED that:

   1. Plaintiff's motion for default judgment (ECF No. 19) be GRANTED IN PART.

   2. Judgment be entered against defendants jointly and severally in the amount of $4,850.00.

   3. The Clerk of Court be directed to vacate all dates and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: March 31, 2014

*[signature]*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE